IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

PHILLIP P. BATTEASE,

                Petitioner,

        v.

PAUL CHAPPIS,[1] Superintendent, Elmira
Correctional Facility,

                Respondent.

No. 9:11-cv-01072-JKS

MEMORANDUM DECISION

Phillip Battease, a New York state prisoner proceeding *pro se*, filed an Amended Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Battease is in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Elmira Correctional Facility. Respondent has answered. Battease has not replied.


I. BACKGROUND/PRIOR PROCEEDINGS

Battease and his 22-year-old niece engaged in sexual activity during parts of March and April of 2007. After the victim, K.G., was released from a heroin detoxification program in mid-March 2007, Battease allegedly sold and supplied to her, in exchange for sex, the prescription drug Avinza, which is a morphine sulfate. In mid-April 2007, K.G. went to the police and reported that Battease had been providing Avinza to her, had coerced her to engage in sex, and had made some videos of their sexual encounters. K.G. further alleged that she had had sex with

---

[1]     It appears that the Superintendent's correct last name is Chappius, and not Chappis. However, this Court has left the caption as it appears on the docket and as used by the Respondent.

Battease because he threatened that he would cause her to lose custody of her young child by telling the child's father that she was using drugs if she did not have sex with him. K.G. additionally stated that Battease sometimes forced her to have sex after she told him no. Battease made videos of some of the sexual encounters and admitted to police that he had been having sex with his niece, but claimed it was consensual.

A Washington County Grand Jury charged Battease with Criminal Sale of a Controlled Substance in the Fifth Degree, Incest in the Third Degree, Rape in the Third Degree, Criminal Sexual Act in the Third Degree, Rape in the First Degree by Forcible Compulsion, and Coercion in the First Degree.

On October 31, 2007, a jury found Battease guilty of Criminal Sale of Controlled Substance in the Fifth Degree, Incest in the Third Degree, Rape in the Third Degree, Criminal Sexual Act in the Third Degree, and Coercion in the First Degree. The jury found Battease not guilty of Rape in the First Degree.

On January 23, 2008, the County Court held a persistent felony offender hearing. At that hearing, the People introduced certified court records establishing that Battease was convicted of third-degree burglary in 1977, fifth-degree sale of a controlled substance on July 31, 2002, and second-degree forgery in 1979. Defense counsel did not object to their admission into evidence. The People also introduced evidence of some of Battease's nineteen misdemeanor convictions. The court found Battease to be a persistent felony offender based on his forgery and controlled substance sale convictions, for which he served over one year each. The court further found that a persistent felony offender sentence was warranted based on Battease's extensive criminal history dating back thirty years, his "total disregard for society and laws," and his conduct leading

to his current conviction, which the court noted was "beyond reprehensible." The court sentenced Battease to five concurrent indeterminate terms of twenty years to life. Noting that Battease had been convicted of multiple sex offenses, the court certified Battease as a sex offender and required that he register with the New York Criminal Justice Services. In addition, the court imposed a $3,000 fine with respect to the controlled substances sale conviction.

On February 26, 2008, Battease filed a *pro se* motion to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. Construing his motion broadly, Battease argued that the conviction was obtained by false evidence because the prosecutor argued in summation that the video clips showed that Battease gave drugs to K.G. Battease also claimed that trial counsel was ineffective for: 1) failing to give notice of his intent to testify before the grand jury; 2) failing to prepare for and consult with Battease prior to the suppression hearing, failing to object to the introduction of evidence found on his computer; 3) failing to subpoena various unidentified witnesses that Battease had proposed, including a medical doctor who could testify as to the effects of Avinza, a morphine sulphate extended-release capsule, and a witness who could testify as to K.G.'s "spiteful nature and habit of lying"; 4) failing to object to the introduction of video clips which the prosecutor alleged showed K.G. "snatching" a pill from Battease; 5) failing to cross-examine unidentified witnesses; 6) failing to obtain a copy of the transcripts of the "controlled call" K.G. made to Battease, in which Battease essentially confessed to having sexual relations with K.G.; and 7) failing to file an unidentified motion. Battease did not include any affidavits from potential witnesses that he claimed defense counsel failed to call.

On June 2, 2008, the trial court denied Battease's CPL § 440.10 motion. The court concluded that although Battease's disagreement with the prosecution's presentation of evidence was understandable, there were no misrepresentations or false evidence. The court further denied Battease's claim that he was denied the effective assistance of counsel, concluding that the decision of whether or not to call a witness rests with defense counsel, that calling a doctor to testify as to the sedating effects of Avinza could have strengthened the prosecution's case, and that the decision not to cross-examine certain witnesses could have been a tactical decision. The court further found that Battease's allegation that counsel was ineffective for failing to object to the introduction of the video clips was without merit.

The Appellate Division granted Battease's application for leave to appeal from the denial of his CPL § 440.10 motion and ordered Battease to consolidate it with his direct appeal.

Through counsel, Battease filed a consolidated direct appeal and appeal from the denial of his CPL § 440.10 motion. Battease argued that: 1) Counts three (third-degree rape), four (third-degree criminal sex act), and six (first-degree coercion) of the indictment were jurisdictionally defective because they failed to allege every material element of the crimes; 2) the evidence was insufficient to establish Battease's guilt and the verdict was against the weight of the evidence; 3) the indictment and proof in support of the indictment were duplicitous; 4) the time frame of the indictment did not provide Battease with notice of the dates of the offenses for which he was being charged and therefore deprived him of due process; 5) the trial court denied Battease a fair trial by failing to relieve defense counsel, permitting constructive amendment of the indictment, and instructing the jury that Avinza was a Schedule II controlled substance when the People provided no evidence in support of that fact; 6) the trial court erred in denying his CPL § 440.10

motion without a hearing; 7) the sentence was excessive; 8) New York's persistent felony offender statute violates the Equal Protection Clause by not considering the staleness of an individual offender's predicate offenses; and 9) the determination by the court and not a jury that Battease was a persistent felony offender was unconstitutional.

Battease further claimed that trial counsel was ineffective because counsel: 1) did not meaningfully communicate with Battease; 2) failed to meet with Battease before the preliminary hearing and suppression hearing; 3) failed to investigate or interview suggested witnesses; 4) failed to facilitate Battease's viewing of the video files which were seized from his computer and to discuss them with Battease prior to trial; 5) waived the preliminary hearing; 6) failed to oppose the People's bail request of $100,000 cash and a $200,000 bond; 7) failed to request a *Mapp* hearing regarding evidence seized from Battease's computer; 8) failed to move to dismiss the third-degree rape, third-degree criminal sexual act, and first-degree coercion accounts on the ground that they were jurisdictionally defective, or alternatively to request a bill of particulars; 9) failed to dismiss all counts on the ground that they were duplicitous and the time frames specified in the indictment were too broad; 10) failed to convince Battease of the "irrationality of his rejecting the reasonable and favorable plea offer"; 11) failed to advise Battease of the need to obtain suitable clothes for trial or to make timely arrangements for him to obtain clothes; 12) failed to obtain a witness list from Battease in a timely manner; 13) did not review the audiotape of the controlled call from K.G. to Battease until the eve of trial; 14) made only a minimal effort during voir dire; 15) failed to move to dismiss the People's opening statement; 16) did not give an adequate opening statement; 17) failed to object to the introduction into evidence of a compact disk and hard drive containing videos of Battease's sexual encounters with K.G.; 18) failing to

interview witnesses before calling them; 19) rested his case without noticing that a witness he had subpoenaed had shown up, and unsuccessfully attempting to repoen his case when the witnesses showed up the following day; 20) belatedly requested a jury instruction on an incident in which the jury may have seen Battease in his jail clothes; 21) rarely objected to the presentation of prejudicial or otherwise inadmissible proof presented by the People; 22) failed to object to leading questions, particularity with regard to the testimony of K.G.; 23) inadequately cross-examined K.G.; 24) failed to request any curative instructions regarding testimony about uncharged crimes; 25) failed to make an adequate motion to dismiss the indictment at the conclusion of the People's case; 26) failed to address the constructive amendment of the indictment; 27) failed to object to the People's summation; 28) failed to request an accomplice instruction with respect to the incest count; 29) failed to file a motion to set aside the verdict.

On June 17, 2010, the Appellate Division concluded that there was insufficient evidence to support the third-degree rape and third-degree criminal sexual act convictions, reversed those convictions, vacated the remaining convictions and remanded for resentencing. The court found Battease's remaining arguments to be unavailing. The court concluded that the remaining three counts were supported by sufficient evidence and were not against the weight of the evidence. The court rejected Battease's claims that the trial court erroneously denied his CPL § 440.10 motion without a hearing, that the prosecutor had committed misconduct, and noted that Battease had made a sufficient record as to his complaints about trial counsel which were addressed by the trial court. With respect to Battease's claim that his sentence was excessive and violated the United States Constitution, the court noted that at the time he was sentenced, the New York Court of Appeals had upheld the constitutionality of New York's persistent felony offender statute.

Although the Second Circuit had later held that the persistent felony offender scheme violated the Sixth Amendment under *Aprendi v. New Jersey*, 530 U.S. 466 (2000), the state appellate court was bound by the ruling of the New York Court of Appeals until such conflict is resolved by the United States Supreme Court. In addition, because the appellate court reversed two of Battease's convictions, they would no longer be part of the persistent felony analysis at resentencing. The court likewise denied Battease's claims that trial counsel was ineffective.

Through counsel, Battease sought leave to appeal to the New York Court of Appeals on the grounds that: 1) the first-degree coercion charge was jurisdictionally defective; 2) his third-degree criminal sale and first-degree coercion convictions were not supported by sufficient evidence; 3) the trial court erred in failing to relieve defense counsel; 4) the court erred in instructing the jury that Avinza was a Schedule II controlled substance; 5) trial counsel was ineffective (rasing the majority of claims he had raised in his consolidated appeal); 6) the trial court erred in denying his CPL § 440.10 motion without a hearing; and 7) New York's persistent felony offender statute is unconstitutional.

On September 29, 2010, the Court of Appeals summarily denied Battease's application for leave to appeal.

At the resentencing hearing, defense counsel argued that Battease could not be sentenced as a persistent felony offender because the certified court records of the felony convictions did not contain any identifying information, other than Battease's name, to prove beyond a reasonable doubt that Battease had in fact been convicted of those crimes. The court ultimately adjudicated Battease to be a persistent felony offender and sentenced him to three concurrent indeterminate

terms of twenty years to life. The court further required Battease to register as a sex offender, ordered that he pay a $3,000 fine, and entered a permanent order of protection in favor of K.G.

Through counsel, Battease appealed his sentence to the Appellate Division, arguing that: 1) New York Penal Law § 70.10 violates the Equal Protection Clause of the New York and United States Constitution by not considering the staleness of an individual's predicate offenses and by permitting the court and not a jury to adjudicate him as a persistent felony offender; 2) the People failed to prove beyond a reasonable doubt that Battease was a persistent felony offender; and 3) his sentence was harsh and excessive.

Battease then filed a *pro se* supplemental brief in which he contended that: 1) the trial court erred in its instruction on incest; 2) the trial court erred in not giving an accomplice charge with respect to the incest count; 3) the trial court erred in failing to instruct on second-degree coercion; 4) the trial court erred in dismissing his CPL § 440.10 motion without a hearing; 5) the $3,000 fine was excessive and an abuse of discretion; and 6) third-degree incest should not be considered a sex offense requiring registration under New York Law.

The Appellate Division denied Battease's claims in a reasoned, published opinion. The Appellate Division first denied Battease's claim that the persistent felony offender statute violated his right to equal protection because other sentencing enhancements for recidivists do not permit consideration of convictions occurring more than ten years earlier. The court found that the New York Legislature has the discretion to distinguish between societal ills and prescribe appropriate sanctions. Further, to the extent Battease challenged his sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the court noted that the Second Circuit had since vacated its decision finding that New York's persistent felony offender statute was constitutionally defective. The

Appellate Division likewise held that the People had sustained it's burden of proving the prior felony convictions upon which Battease's felony offender status was predicated because the record contained Battease's certificates of conviction and he was additionally identified by, *inter alia*, name, date of birth, social security number. The Appellate Division further denied Battease relief on the ground that his sentence was harsh and excessive based on the nature of his crimes and extensive criminal history. The court declined to address Battease's arguments set forth in his *pro se* supplemental brief, concluding that those arguments should have been raised in an appeal from the original judgment of conviction and may not be raised on an appeal from resentencing.

Through counsel, Battease filed an application for leave to appeal to the New York Court of Appeals. The court summarily denied leave to appeal.

Battease timely filed an Amended Petition for Writ of Habeas Corpus with this Court.

## II. ISSUES RAISED

Battease raises the following claims in his Amended Petition before this Court: 1) his trial counsel was ineffective on multiple grounds, 2) he was denied various constitutional rights by being sentenced as a persistent felony offender where the persistent felony offender does not limit the age or class of prior convictions which may be considered; 3) the court made four instructional errors, there was insufficient evidence to support his conviction, and the trial court erred in failing to grant Battease's motion for substitute counsel; 4) the prosecution committed misconduct in summation; 5) the state failed to prove his prior predicate felonies beyond a reasonable doubt; 6) he should not be required to register as a sex offender because third-degree incest is not a sex offense under state penal law; 7) the court failed to make an explicit finding

necessary to impose the $3,000 fine, and the fine, together with his sentence of imprisonment, was excessive.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v. Lett*, 130 S. Ct. 1855, 1865-66 (2010). The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds and not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted). In applying these standards on habeas review, this Court reviews this "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Battease did not file a traverse. 28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.

Ordinarily, under § 2248, where there is no denial of the Respondent's allegations in the answer, or the denial is merely formal unsupported by an evidentiary basis, the court must accept Respondent's allegations. *See Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where there is no traverse filed and no evidence offered to contradict the allegations of the return, they must be accepted as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66 (2d Cir. 1952) (per curiam).

IV. DISCUSSION

1.      *Sentencing Errors (claims 2, 5, 6, 7)*

A.      *Claim 2. Adjudication as a persistent felony offender.*

Battease first argues that his adjudication as a persistent felony offender violated his Fourteenth Amendment rights by allowing the trial court to consider his 1979 conviction for forgery. Battease argues that the persistent felony offender statute is unconstitutional because, in contrast to other sentencing schemes, it allows the court to consider felonies that are older than

ten years and because the statute does not consider the class of prior felony convictions, thus allowing a repeat violent felony offender to be eligible for a lesser sentence than a persistent felony offender with non-violent prior convictions.  Battease further argues that the persistent felony offender statute is unconstitutional because it allows the judge to make factual findings in violation of *Apprendi*, 530 U.S. 466.  The Appellate Division denied Battease relief on this claim.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  The Equal Protection Clause directs state actors to treat similarly situated people alike. *See Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985); *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).  A criminal defendant alleging an equal protection violation must specifically prove that the "decisionmakers in *his* case acted with discriminatory purpose."  *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).  Absent a finding of such purpose, a petitioner's discrimination claim must be denied.  *See id.* at 297-99 (denying petitioner's equal protection challenge to Georgia's capital punishment statute because there was no evidence that the Georgia legislature either enacted the statute to further a discriminatory purpose or maintained the statute because of its disproportionate impact).

For purposes of a state prisoner's equal protection claim, the Second Circuit has held that New York's persistent felony offender statute "does not involve a suspect classification or impinge on a fundamental right" and therefore "need only survive rational basis scrutiny." *Griffin v. Mann*, 156 F.3d 288, 291 (2d Cir. 1998).  Even assuming that being sentenced under the persistent felony offender statute implicates equal protection concerns, its differences from other New York sentencing schemes have a rational basis and Battease's claim must fail.  In *Griffin v.*

*Mann*, the Second Circuit held that New York's persistent felony offender statute was "entirely rational." *Id*. at 292. The court noted that the persistent felony offender scheme authorizes the sentencing court to issue an enhanced sentence for repeat felons where "extended incarcerations and life-time supervision will best serve the public interest." *Id*. at 290 (quoting N.Y. PENAL LAW § 70.10(2)). It was enacted to prescribe a "special sentence for only those who persist in committing crimes after repeated exposure to penal sanctions." *Id*. at 291 (quoting COMM'N STAFF NOTES ON THE PROPOSED NEW YORK PENAL LAW, § 30.10, at 285 (1964)). In contrast to other New York sentencing schemes, sentencing as a persistent felony offender is discretionary. *See id*. at 292. In determining whether to sentence a defendant as a persistent felony offender, a court may consider prior felony convictions regardless of their age, class, and which jurisdiction they occurred in, while the mandatory schemes limit these factors. *See id*. at 291; N.Y. PENAL LAW § 70.10. In light of the purpose of the persistent felony offender statute, the Second Circuit concluded that "New York might reasonably have concluded that it was necessary to circumscribe narrowly what constitutes a qualifying crime for purposes of the mandatory sentencing enhancements . . . while providing a looser definition of predicate crimes for purposes of the discretionary sentencing enhancements for persistent offenders." *Id*. at 292. Because the persistent felony offender statute serves a different purpose from other sentencing schemes, the fact that it does not limit the age or class of predicate felonies survives rational basis review and Battease is not eligible for relief on this claim. *See Mason v. Duncan*, No. 02-CIV-5729, 2011 WL 2519212, at *9 (S.D.N.Y. Mar. 18, 2011) (the persistent felony offender statute "is rationally related to the societal and penal interests of punishing repeat offenders and protecting society from such repeat felons").

Further, in *Portalatin v. Graham*, 624 F.3d 69, 84-87 (2d Cir. 2010) (en banc), the Second Circuit held that New York's persistent felony offender statute did not require the sentencing court to engage in impermissible fact-finding in violation of the Sixth Amendment, as construed by the Supreme Court in *Apprendi*, 530 U.S. 466, and its progeny. Battease is therefore not entitled to relief on this claim.

B.     *Claim 5. Failure to prove predicate felonies beyond a reasonable doubt.*

Battease next argues that he was denied due process and equal protection at sentencing because the People did not establish beyond a reasonable doubt that he was a persistent felony offender. Specifically, he argues that the two certified court records which were admitted into evidence impermissibly identified him only by name. Battease contends that under New York Law, certificates of conviction, standing alone, are insufficient to establish beyond a reasonable doubt that a defendant has a previous felony conviction. The Appellate Division held that the People had sustained their burden of proving the prior felony convictions upon which Battease's felony offender status was predicated because the record contained Battease's certificates of conviction, and he was identified by, *inter alia*, name, date of birth, and social security number.

Battease's claim is not cognizable on habeas review because he failed to assert that the decision of the appellate court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). Rather, Battease argues, as he did below, that state law requires evidence corroborating a defendant's identity, which is beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011);

*see also Bell v. Cone*, 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law). Battease can not transform this state-law issue into a federal one by simply asserting a violation of due process and equal protection. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). In any event, Battease's claim is without merit. In addition to the certificates of conviction, the prosecution introduced corroborating evidence that Battease was in fact the person who committed the two felonies at issue.

      C.     *Claim 7. Excessive and vindictive sentence.*

      Battease next argues that the court violated his right to due process and equal protection of the laws by imposing a $3,000 fine. He argues that the sentencing court failed to make a finding under state law regarding the "profit gained" by Battease's conduct, and that the fine, together with his prison sentence, was "excessive and can be viewed as a vindictive act for the defendant exercising his right to trial." The Appellate Division denied Battease relief on this claim.

      Battease's argument that the trial court failed to enter a specific finding with respect to profit gained before imposing the fine is not cognizable on habeas review because he again failed to assert that the decision of the appellate court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). Rather, Battease asserts a state law claim which is beyond the purview of this Court in a federal habeas proceeding. *Swarthout*, 131 S. Ct. at 863; *see also Bell*, 543 U.S. at 455. In any event, New York Penal Law § 80.00(c) requires a sentencing court to "consider," *inter alia*, "the profit gained by defendant's conduct." The statute requires that the court enter a finding as to the amount of a defendant's gain only

where the court imposes a fine double the amount of the defendant's gain from the commission of the crime. N.Y. PENAL LAW § 80.00(1)(b), (3). In this case, the sentencing court imposed a flat fee of $3,000, and no explicit finding was required.

Battease's claim that his sentence was vindictive is also without merit. A sentence is unconstitutionally vindictive if it imposes a greater punishment because the defendant exercised a constitutional right such as the right to a jury trial or the right to appeal. *Wasman v. United States*, 468 U.S. 559, 567-68 (1984) (citations omitted); *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). Thus, where a harsher sentence is imposed by the same judge on resentencing either after a new trial or vacatur of sentence, the defendant is entitled to a "presumption of vindictiveness" which may be rebutted by "objective information in the record supporting the harsher sentence." *Jones v. Hollins*, 884 F. Supp. 758, 762 (W.D.N.Y. 1995). The presumption does not apply, however, where the penalty imposed on resentecing is the same as the original sentence. *Id.* In this case, the sentence imposed on resentecing was effectively the same length—three instead of five concurrent terms of 20 years to life and a $3,000 fine—as the original sentence, and was within the permissible sentencing range. Battease can therefore only demonstrate a due process violation by demonstrating "actual vindictiveness on resentencing." *Id.* (quoting *Texas v. McCullough*, 475 U.S. 134, 138 (1986)). Battease does not point to anything in the record—nor has this Court found on its own review—any evidence of actual vindictiveness. Battease's claim for habeas corpus relief based on vindictive sentencing must be denied.

To the extent that Battease's argument implicates to the Eighth Amendment, his claim is also without merit. The Eighth Amendment, which applies to the States by virtue of the Fourteenth Amendment, *see Robinson v. California*, 370 U.S. 660 (1962), provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Supreme Court has held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation omitted).

In this case, the New York courts upheld Battease's conviction of three consecutive terms of twenty years to life and a $3,000 fine where Battease was convicted of using drugs and threats to repeatedly coerce his niece into having sex with him. Battease's is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Ewing v. California*, 538 U.S. 11, 30 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring in part and concurring in judgment)). The affirmance of Battease's sentence was not "contrary to, or [did not] involve[ ] an unreasonable application of" the as yet unclear parameters of the gross disproportionality principle. *See Lockyer*, 538 U.S. at 73 (2003). Accordingly, Battease is not eligible for relief on his claim.

D.      *Claim 6.  Registration as a sex offender*

Battease next argues that he was denied various constitutional rights because he was required to register as a sex offender under the Sex Offender Registration Act ("SORA"), despite the fact that third-degree incest is not classified as a sex offense under New York Penal Law. In

essence, Battease appears to be arguing that the penal law's more limited classification of sex offenses should trump SORA's broader definition, and that his classification as a sex offender under SORA impermissibly increased his punishment for incest.

Battease raised this claim for the first time in his appeal from resentencing, which the Appellate Division declined to address, concluding that this argument should have been raised on direct appeal from the original judgment of conviction. Respondent is correct in asserting that Battease failed to exhaust this claim on direct appeal. New York permits only one application for direct review, and, because Battease failed to raise this claim in the ordinary appellate process, his claim is procedurally defaulted. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000). A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). Battease does not claim that cause exists for his procedural default, nor does he assert actual innocence.

Despite Battease's failure to exhaust a number of his claims, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Here, Battease's claim that his sentence was impermissibly increased under conflicting laws is without merit. Battease is correct in asserting that SORA includes third-degree incest as a

"sex offense" requiring a court to certify the defendant as a sex offender and the defendant to register after serving his sentence, *see* New York Correction Law § 168-a(2), and that in contrast, New York Penal Law § 70.80, which sets forth the sentencing scheme for sex offenders, excludes third-degree incest as a "felony sex offense."  In fact, SORA's notification provision covers 36 offenses, including seven misdemeanors and several crimes not involving sexual contact.  *Doe v. Pataki*, 120 F.3d 1263, 1281 (2d Cir. 1997); *see also People v. Knox*, 875 N.Y.S.2d 828, 833 (N.Y. 2009) (concluding that the legislature could have rationally included unlawful imprisonment of a child as a sex offense under SORA, even where there is no evidence of sexual assault).  The Second Circuit, however, has rejected the argument that SORA's broad coverage renders it punitive, concluding that "SORA's notification provisions are reasonably related to the nonpunitive, prospective goals of protecting the public and facilitating law enforcement efforts, and that the Act's occasional imprecise targeting does not suffice to render it punitive."  *Pataki*, 120 F.3d at 1281-82.  The Second Circuit further concluded as follows:

> Although the SORA might be somewhat imprecise and occasionally overbroad in its coverage, the legislature acted well within its authority in determining the kinds of offenses triggering notification, the category of persons subject to the Act's requirements, and the extent of notification appropriate to promote its nonpunitive goals.  The legislature is not required to act with perfect precision, and its decision to cast a net wider than what might be absolutely necessary does not transform an otherwise regulatory measure into a punitive sanction.

*Id.* at 1287-88; *see also Smith v. Doe*, 538 U.S. 84, 96 (2003) (concluding that Alaska's sex offender registration statute was a non-punitive civil regulatory scheme for purposes of *ex post facto* analysis).

Accordingly, because the legislature acted within its discretion in broadly defining the offenses triggering registration and notification under SORA, and because SORA is a non-

punitive prospective regulatory measure, Battease's argument that the SORA conflicts with Penal Law § 70.80 and impermissibly increases his sentence is without merit.

2.      *Claim 3.  Jury Instruction Errors*

Battease further contends that the trial court committed a number of alleged errors with respect to jury instructions.  A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well established that not only must the challenged instruction be erroneous, it must also violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record.  *Estelle*, 502 U.S. at 72.  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.  *Id.* at 72-73.  "Beyond the specific guarantees enumerated in

the Bill of Rights, the Due Process clause has limited operation." *Id.* Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson*, 431 U.S. at 155. In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72.

Battease raised his jury instruction claims for the first time in his appeal from resentencing, which the Appellate Division declined to address, concluding that this argument should have been raised in an appeal from the original judgment of conviction. Because Battease failed to raise these claims on direct review, his claim is procedurally defaulted. *Spence*, 219 F.3d at 170. Battease does not claim that cause exists for his procedural default, nor does he assert actual innocence. *House*, 547 U.S. at 536; *Murray*, 477 U.S. at 495-96. Nonetheless, this Court will address Battease's claims because they are without merit. *See* 28 U.S.C. § 2254(b)(2); *Rhines*, 544 U.S. at 277.

A. *Instruction on Avinza*

Battease first contends that the trial court erred in instructing the jury that Avinza, a morphine sulfate, is a controlled substance under New York law because "[t]he judge did not say how he made such a determination," "the defense certainly didn't concede that element of the crime," and the instruction "relieved the People from their burden and vouched for the witness's testimony."

At trial, K.G. testified that Battease sold her AVINZA, "a generic morphine." K.G. had seen a bottle of Avinza pills with Battease's name on it, had taken him to the pharmacy to pick up

his Avinza prescription, and bought Avinza from Battease prior to the instigation of their sexual relationship. In closing argument, defense counsel argued that the prosecution had failed to present any expert testimony that the medication Battease provided to K.G. was in fact a controlled substance. The People objected, and the court responded that "the jury is going to be instructed on Avinza and the Public Health Law, and that no person has the legal right to sell Avinza."

The trial court instructed the jury in part as follows:

> The term controlled substance includes Avinza. . . . A person knowingly sells Avinza when that person is aware that he or she is selling a substance which contains Avinza. A person unlawfully sells Avinza when that person has no legal right to sell that substance. Under our law, with certain exceptions not applicable here, a person has no legal right to sell Avinza. In order for you to find the defendant guilty of this crime, the People are required to prove, from all the evidence in this case beyond a reasonable doubt both the following two elements: One, that on or about April 2007 . . . [Battease] sold Avinza; and two, that [Battease] did sell knowingly and unlawfully.

The instruction is consistent with New York Public Health Law § 3306, which provides that morphine, "by whatever official name, common or usual name, chemical name, or brand designated name," is a Schedule II controlled substance. N.Y. Pub. Health Law § 3306, Schedule II (a), (b)(1)(13). Further, the instruction did not relieve the prosecution of establishing beyond a reasonable doubt all elements of the fifth-degree sale of a controlled substance. Under New York law, expert testimony is not required to prove that a substance at issue is in fact a controlled substance. *People v. Luscomb*, 892 N.Y.S.2d 267, 269 (N.Y. App. Div. 2009). Battease is therefore not eligible for relief on this claim.

B.     *Incest instruction*

Battease next argues that the court erred in instructing the jury that incest includes sexual relations between people who are related by marriage, and not just by blood.

The court instructed the jury as follows:

> Incest in the third degree.  Under our law, a person is guilty of incest in the third degree when he engages in sexual intercourse or oral sexual conduct or anal sexual conduct with a person with whom he or she knows to be related to him whether through marriage or not as a niece.

The instruction is in accordance with state law, which defines third-degree incest as

follows:

> A person is guilty of incest in the third degree when he or she marries or engages in sexual intercourse, oral sexual conduct or anal sexual conduct with a person whom he or she knows to be related to him or her, whether through marriage or not, as an ancestor, descendant, brother or sister of either the whole or half blood, uncle, aunt, nephew or niece.

N.Y. PENAL LAW § 255.25.

Battease is therefore not eligible for relief on this claim.

C.      *Coercion instruction*

Battease next asserts that the trial court erred in instructing the jury on coercion.  Battease

asserts that the trial court impermissibly "mixed the language of coercion 1st with coercion 2d to

form the charge of coercion 1st" and that he was accordingly convicted of a crime which was

"made up by the Judge."

The court instructed the jury as follows:

> Under our law a person is guilty of coercion in the first degree when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in and when he or she thereby compels or induces the person to attempt to commit a felony by means of instilling in him or her the fear that if the demand is not complied with, the actor or another will expose a secret or publicize an asserted fact, whether true or false, intending to subject some person to hatred, contempt or ridicule.

Under New York law, a person is guilty of first-degree coercion "when he or she commits

the crime of coercion in the second degree" and "[h]e or she thereby compels or induces the

victim to . . . [c]ommit or attempt to commit a felony." N.Y. PENAL LAW § 135.65(2)(a). A person is guilty of second-degree coercion where he or she "compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in . . . by instilling in him or her a fear that, if the demand is not complied with, the actor or another will . . . [e]xpose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule." N.Y. PENAL LAW § 135.60(5). The trial court's incorporation of the elements of second-degree coercion into its instruction on first-degree coercion was consistent with New York law, and Battease's claim is without merit.

D.    *Accomplice testimony*

Battease lastly argues that the trial court erred in failing to *sua sponte* give an accomplice instruction to the incest charge.

Under New York law, "evidence of consent to intercourse gained by threats, intimidation, fraud or undue influence presents a question of fact for the jury as to whether the witness acted voluntarily." *People v. Facey*, 499 N.Y.S.2d 517, 521 (N.Y. App. Div 1986). "Although in such cases a defendant may not be guilty of an actual rape or other sexual assault, it cannot be said as a matter of law that the victim is an accomplice to incest because he or she submitted to the advances of the dominant relative." *Id.* There is no test for determining whether the witness/victim is an accomplice; rather, each case must be decided on its own facts. *Id.* Here, there is evidence that Battease used drugs and threats to repeatedly coerce his niece into having sex with him. Battease has not met his burden of showing that the court's failure to give an accomplice instruction "so infected the entire trial that the resulting conviction violates due process." *See Henderson*, 431 U.S. at 155; *Estelle*, 502 U.S. at 72.

3.      *Claim 4.  Prosecutorial Misconduct*

Battease next contends that the prosecution committed misconduct during closing

argument by representing that a video clip showed K.G. "snatching" a pill from Battease's mouth.

Battease asserts that the video instead showed K.G. reaching out to touch his cheek.  Battease

further argues that the prosecution committed misconduct by asserting that K.G. had told the truth

and by stating "there are 28 kids among you on the jury" in an attempt to appeal to the panel.  The

Appellate Division found this claim unavailing.

"While a prosecutor should not use arguments calculated to inflame the passions or

prejudices of the jury, it is impossible to expect that a criminal trial without some showing of

feeling; the stakes are high, and the participants are inevitably charged with emotion." *Osorio v.*

*Conway*, 496 F. Supp. 2d 285, 300 (S.D.N.Y. 2007) (quoting *United State v. Young*, 470 U.S. 1,

8, 10) (internal quotation marks omitted)).  To prevail on a claim of prosecutorial misconduct,

Battease must show that the conduct "so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation

omitted).  "To constitute a due process violation, the prosecutorial misconduct must be of

sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v.*

*Miller*, 483 U.S. 756, 765 (1987) (citation and internal quotation marks omitted).  The remarks

"must be examined within the context of the trial to determine whether the prosecutor's behavior

amounted to prejudicial error." *Osorio*, 496 F. Supp. 2d at 301 (quoting *Young*, 470 U.S. at 12).

To be entitled to relief, Battease must show "that he suffered actual prejudice because the

prosecutor's comments during summation had a substantial and injurious effect or influence in

determining the jury's verdict." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (citation omitted).

The Second Circuit applies a three-part test when considering whether prosecutorial misconduct was so prejudicial as to deprive a defendant of a fair trial: 1) the severity of the misconduct; 2) the measures adopted to cure the misconduct; and 3) the certainty of conviction absent the misconduct. *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002).

In summation, defense counsel asserted that the video clip at issue did not show K.G. taking a pill from Battease's mouth, but rather showed her touching his collar. Defense counsel further argued that the video showed that K.G. was capable of consenting to sex with Battease. Defense counsel additionally argued that the father of K.G.'s child was aware of her drug problem prior to her sexual relationship with Battease, suggesting that she could not have been coerced by threats of disclosing her drug use to him. In rebuttal, the prosecution stated that K.G. had testified that the video clip at issue showed her reaching up and grabbing a pill from Battease's mouth, and argued that this action was visible in the video clip shown to the jury. The prosecution further argued that K.G. returned to Battease's residence after detox because Battease had promised to help her recover, and she "doesn't want to lose her daughter, and we understand. I think there are 28 kids among you on the jury."

The prosecution's comments do not amount to misconduct, but rather constituted a "fair comment on the evidence" and a "fair response to remarks made by the defense counsel during summation." *Osorio*, 496 F. Supp. 2d at 301. In addition, the court instructed the jury that the parties' assertions in summation were argument and not evidence, and that "[t]he lawyers will undoubtedly differ with each other on conclusions to be drawn from the evidence." It is

-26-

presumed that the jury followed this instruction. *Weeks*, 528 U.S. at 234. Lastly, the evidence

against Battease, which included videos he made of the sexual encounters and a written statement

to police admitting the nature of his relationship with his niece, was overwhelming. Battease

cannot establish any of the prongs of the three-part test set forth by the Second Circuit and

accordingly cannot prevail on this claim of prosecutorial misconduct.

4.      *Claim 3. Insufficiency of the evidence.*

Battease next argues that his three convictions were not supported by sufficient evidence,

but does not attach any supporting argument. The Appellate Division agreed that Battease's

convictions for third-degree rape and third-degree criminal sexual act were not supported by

sufficient evidence, but denied Battease relief on his remaining convictions.

Battease misperceives the role of a federal court in a habeas proceeding challenging a

state-court conviction. As articulated by the Supreme Court in *Jackson*, the constitutional

standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis

in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).

This Court must therefore determine whether the Appellate Division unreasonably applied

*Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by

considering how it would have resolved any conflicts in the evidence, made the inferences, or

considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record

of historical facts that supports conflicting inferences," this Court "must presume—even if it does

not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). In this case, the Appellate Division determined that there was sufficient evidence of each element of the three remaining convictions which survived direct review. Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Battease bears the burden of establishing by clear and convincing evidence that these factual

findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The evidence in the record does not compel the conclusion that no rational trier of fact could have found proof that Battease was guilty of these crimes, especially considering the double deference owed under *Jackson* and the AEDPA. Accordingly, Battease is not entitled to relief on this legal insufficiency claim either.

5.      *Claim 3. Substitution of counsel*

Battease argues that the trial court denied him a fair trial by declining to appoint new counsel on the eve of trial. Battease raised this for the first time in his appeal to the Court of Appeals, which the court summarily denied.

At an October 26, 2007, pretrial conference, which was the Friday before trial, Battease stated on the record as follows:

> [Defense counsel] has been representing me for six months. He's totally—he's unprepared for trial as he was for that suppression hearing. He come in to me—the first time he's talked, if I have any witnesses or I have any information, it was probably out here in the office for about five minutes. He's totally unprepared. I will not allow him to represent me at trial. I'm just going to get railroaded. I'd like to dismiss [defense counsel] at this time. I will be drafting a letter Monday filing a formal complaint with the New York State Bar Association in his actions.

Battease alleged that defense counsel failed to hire a private investigator early on in the case, failed to interview witnesses, and also failed to go to Battease's apartment to obtain "some evidence."

Defense counsel explained that Battease had not demonstrated a need for a private investigator, and that, in any event, his office did not have the resources to procure one. The court denied Battease's motion at that time, taking the motion under further consideration.

The prosecution then stated as follows:

Just one thing, I'd like to be heard on—on the representation [by defense counsel]. As I've repeatedly met with [defense counsel] with the Court and in my office. He's reviewed all of our file. He's reviewed the videotapes of [Battease] having sexual relations with the victim, his niece. He's filed the motions and motions' [sic] been answered. We've argued those motions. He's zealously defended [Battease] the entire time we've been there. And there was–as he's been to my office this morning, we conferenced this case earlier this week with the Court. There's been active representation of [Battease] by [defense counsel].

Defense counsel added that he had been doing felony casework for a number of years, and that "Battease does not understand how things work, that's basically my problem and his problem, but I'm ready for trial."

The trial court acknowledged having received witness lists from each party. Battease then protested, stating that defense counsel "can't possibly have a full list of all the potential witnesses." The court then asked defense counsel to go over the witness list with Battease to determine if any further names should be added. Battease added several names to the list. Defense counsel represented that he had reviewed all evidence provided by the prosecution except for an audiotape of a controlled call, which would be provided later that day.

The prosecution then represented that "[Battease] just handed my office a motion to dismiss on speedy trial grounds." The court allowed Battease to argue the motion himself. The court denied the motion, concluding that the prosecution had been ready for trial since the day of Battease's arraignment and that the trial had been delayed due to Battease's requests for adjournment, request for a hearing, and various motions filed.

Defense counsel then stated that Battease "would like to add a complaint that I'm not subpoenaing a random expert on Siboxin." TR 1 at 78.

Prior to adjournment for the day, the court notified Battease that if he had any other concerns that he should put them in writing, and the court would address them on Monday.

On Monday, October 29, 2007, Battease requested through counsel that additional witnesses be added. He then stated on the record his complaints with defense counsel:

> On Friday I had spoken and asked if [defense counsel] could be relieved from this case. We never started to prepare for this hearing until Friday afternoon for trial. I never really met with him. I called his office a few times and had spoken briefly. If I seen him in court he often told me I will be over to see you. Same with the parole hearing. I made a list starting out with from pretty much the beginning from where things have drawn as far as the time line. I asked for preliminary when I was first arrested and arraigned in Whitehall Village Court. [Defense counsel] showed up and the first time I saw him was at that preliminary hearing at the beginning of it. I had a few minutes with him like we are now in Whitehall Court. Then we started the preliminary. He did not discuss what rights or whatever I may have at that preliminary or how that was supposed to go. Like I said, he allowed it to start without any conference. The only conference we had was in front of the Judge. At that time, he told me later after that hearing that he would go see the People. After that hearing, he indicated to me that the incest charge would be thrown out because she was never charged, that's why since I was charged I thought it would be dismissed because she was never charged. I told him to file intent after that hearing, intent to testify before the grand jury if it was convened. I repeatedly called his office and was told nothing has been done yet. It is not going on. He said he would know when the grand jury has done that paper. As far as I know, the District Attorney has had no notice because I was not notified to testify at the grand jury. I never had that opportunity. The next incident with [defense counsel] was he showed up at a parole hearing at the county jail. I was in a holding cell with all glass, glass door, small crack between the door. [Defense counsel] come and told me that he had adjourned the case for parole and he went to see the people, and he put me on what they have call a calendar . . . .I asked him about the 45 day limit, if I am not indicted could I be released. He said, "Certainly." I said, "What about parole, is that going to hold? And he said, "No. We can take care of that when the time comes." At a later conference, I spoke with him on the phone. He told me no, he told me 45 days is up. He said no sense in it because you are on parole hold, you cannot get out. He misinformed me there.

The court responded as follows:

> [THE COURT]:     Mr. Battease, in sum and substance, is it your claim that [defense counsel] hasn't showed up, hasn't discussed the case with you, isn't prepared, hasn't done anything you asked?

> [BATTEASE]:     Correct.

> [THE COURT]:     Is that it in a nut shell at every level, [he] hasn't done every single thing you asked?
> . . . .

[THE COURT]:      Mr. Battease, [defense counsel] is a lawyer, and I'm certain there is a number of things that he is aware of as a lawyer that you aren't, that's expected of everybody that's a lay person, but that's your complaint?

[BATTEASE]:      Particularly, for preparing for this trial.  He never started to make the witness list until yesterday.  He was doing it in court Friday.  He was doing it here in court.  We never discussed who, what.

[THE COURT]:      Mr. Battease, in court on Friday it was you that were flowing out names and facts and figures, it was not [defense counsel].
. . .
        As I told you Friday, [defense counsel] is a public defender.  You have the option to retain an attorney.  I understand you might not be able to afford a retained one.  When you apply for the public defender, you don't get to pick and choose an attorney.  You get an attorney free of charge.  [Defense counsel] is that attorney.  From my perspective sitting in court, he has done everything he is supposed to do.  I am not privy to all of the conversations you and he have had, and I don't know who said what or what you requested.  I can tell you from where I sit, he has done everything he is supposed to do from my perspective.  He filed his motions, he showed up, he represented you at the Huntley hearing.  On that record, he advised you not to testify.  You have always had the option to testify if you chose to take that option, and you did that.  We are here today, and we are here for trial, and he is your attorney in this matter.  Unless you hired someone else, I don't see any grounds that I know of or I have any information about other than you telling me that he has not done exactly what he is supposed to do.  I have seen [defense counsel] in front of me and he has done a commendable job.
. . .
        [T]here is some appearance that you are doing everything you can to frustrate the process.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. amend VI. The Supreme Court has, however, "recognized that the right to choose one's own counsel is not absolute."  *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004).  "The Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing."  *Id.* "Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may

not compel defendant to proceed with incompetent counsel." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997).

It is not sufficient for a defendant simply to request new counsel. "[A] defendant seeking substitution of assigned counsel must . . . afford the court with legitimate reasons for the lack of confidence." *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981). The Supreme Court has, however, "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Rather, "[i]n order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *McKee*, 649 F.2d at 931 (citation omitted). In determining whether a trial court abused its discretion in denying a motion for substitute counsel, the Second Circuit looks to the timeliness of defendant's motion, the adequacy of the court's inquiry into the defendant's complaints, and whether the conflict "resulted in [a] total lack of communication preventing an adequate defense." *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001).

Battease fails to allege facts that would entitle him to habeas relief. Here, Battease requested substitute counsel on the eve of trial. The court afforded Battease several opportunities to thoroughly air his complaints about counsel and adequately inquired into the nature of Battease's concerns. Battease's complaints about his counsel do not rise to the level of a complete breakdown in communication or an irreconcilable conflict, but rather amount to disagreement over trial tactics. The trial court concluded that although defense counsel might not have done everything Battease asked, defense counsel had from it's perspective done everything

necessary to competently defend him. Because Battease fails to demonstrate that the factors enumerated by the Second Circuit in *Simeonov* weighed in favor of granting his substitution motion, Battease cannot show that he was denied his Sixth Amendment right to counsel and is therefore not entitled to relief on this claim.

6.      *Claim 1. Ineffective Assistance of Counsel*

Finally, Battease claims that trial counsel was ineffective for: 1) failing to consult with him before trial; 2) failing to call to the stand a witness who showed up late and could have testified to K.G.'s "spitefulness"; 3) conceding that there was enough evidence to hold a grand jury proceeding; 4) failing to file notice that Battease wanted to testify before the grand jury; 5) failing to obtain e-mails and letters which were in Battease's apartment; 6) adjourning Battease's parole hearing while the instant case was pending; 7) failing to consult with Battease prior to the *Huntley* hearing; 8) failing to consult with Battease regarding the witness list, Pet. at 15; 9) failing to request suppression of unidentified "crucial evidence"; 10) failing to present a meaningful defense; 11) failing to make an organized statement at the end of the People's case for the dismissal of the charges; 12) failing to object to the jury instructions on coercion and incest, and for failing to request an accomplice instruction; 13) failing to prepare for the persistent felony offender hearing, sentencing, or any hearings at all; 14) failing to file a notice of appeal; and 16) failing to object to the "constructive amendment of the indictment" after K.G. gave conflicting testimony as to why she felt coerced into having a sexual relationship with her uncle. In support of his argument, Battease asserts that his trial counsel has since been disbarred.

The Appellate Division denied Battease relief on this claim, concluding as follows:

Defense counsel was presented with a difficult case where his client had made a video of his conduct and, upon initial questioning by police, he had told them about the video and

-34-

acknowledged the sexual activity. Nonetheless, counsel was able to get an acquittal on the count charging a B felony, the most serious charge that [Battease] faced. Counsel also made a detailed motion regarding the legal sufficiency of the evidence as to counts 3 and 4, preserving for review an issue upon which he has now prevailed. The cross-examination of the victim raised considerable credibility issues regarding some of her testimony. Three witnesses were produced in an effort to present a defense. Timely objections were asserted. Appropriate motions were made before and at trial. While representation was less than perfect, the totality of the circumstances reveals that [Battease] received meaningful representation.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant "must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense." 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393. An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New

York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's errors, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id*. at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id*. (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id*. (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Because the state court adjudicated the merits of his ineffective assistance claim, to obtain habeas relief, Battease must prove "that the state court either identified the federal standard for ineffective assistance but applied that standard in an objectively unreasonable way, or that the

state applied a rule that contradicts the federal standard." *Rosario v. Ercole*, 601 F.3d 118, 122 (2d Cir. 2010). Battease fails to sustain this burden. The state appellate court found that, overall, Battease received meaningful representation. The state court's conclusion is neither unreasonable nor contrary to federal law. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices." (citations and internal quotation marks omitted)).

## V. CONCLUSION

Battease is not entitled to relief on any ground raised in his Amended Petition at Docket No. 35.

**IT IS THEREFORE ORDERED THAT** Battease's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); Second Circuit R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 13, 2013.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.

United States District Judge